IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:09cv198

| | |
|---|---|
| PATRICIA DIANE GILLILAND, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(b), pursuant a specific Order of referral of the district court, and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment.[1] Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

**I.    Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits.[2] Plaintiff's claim was denied both initially and on reconsideration; thereafter,

---

[1]    Inasmuch as plaintiff has moved under Rule 56, Fed.R.Civ.P., and defendant has moved under Rule 56, but filed a brief citing Rule 12, the court will apply the Rule 56 standard..

[2]    Plaintiff also filed a claim for SSI benefits, which was denied based on spousal income, which denial was not further pursued. Tr., at 59.

plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's

decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra.

IV. **Substantial Evidence**

    A. **Introduction**

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

    B. **Sequential Evaluation**

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

    a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

    b.    An individual who does not have a "severe impairment" will not be found to be disabled;

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

The period under review is a narrow one: plaintiff has alleged an onset of disability of October 22, 2004, and her date last insured was December 31, 2004.

At the First Step of the Sequential Evaluation Process, the administrative law judge (hereinafter "ALJ") found that plaintiff had not worked after her amended alleged onset of disability. Tr., at 24. At the Second Step, the ALJ found that Plaintiff had a severe combination of impairments during the relevant period that included Crohn's disease, bilateral carpal tunnel syndrome, and mild degenerative disc disease, but that such impairments did not meet or equal the criteria listed in Appendix 1, Subpart P of Regulation No. 4. Tr., at 24-25. Before reaching the Fourth Step, the

4

ALJ found that plaintiff had the Residual Functional Capacity (hereinafter "RFC") for work at the light exertional level, with certain restrictions including that such work would not require her to constantly feel, handle, and/or finger. Tr., at 25-28. At the Fourth Step, the ALJ applied such RFC to her past relevant work as an LPN, which he determined was generally performed at the medium exertional level and at the medium to heavy exertional level as described by plaintiff, and determined that such RFC prevented plaintiff from performing her past relevant work during such period. Tr., at 28. At the Fifth Step, the ALJ consulted a vocational expert ("VE"), and found that jobs existed in significant numbers in the national economy that plaintiff could perform considering her functional capacity, age, education, and past work experience (including transferable skills), as the VE had testified. Tr., at 28-29.

**D.  Discussion**

 **1.  Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

I. "ALJ Avots failed to apply the law of the Circuit, to the prejudice of the Plaintiff, in evaluating the effect on the Plaintiff of disabling pain."

II. "The ALJ's analysis of the Plaintiff's pain failed to follow this Circuit's repeated admonitions to the Commissioner of Social Security as to how to evaluate disabling pain."

III. "ALJ Avots erred, to the prejudice of the Plaintiff, in his finding that she had transferable skills to work in a doctor's office taking blood pressure, etc."

IV. "ALJ Avots further erred to the prejudice of the Plaintiff in disregarding the opinion of Dr. McGraw, her treating physician, that she suffers from anxiety and depression, a non-exertional impairment, which should have been considered in combination with her physical medical impairments."

Plaintiff's assignments of error will be discussed *seriatim*.

## 2. First and Second Assignments of Error

In the First Assignment of Error, plaintiff contends that the ALJ failed to apply the law of the Circuit, to the prejudice of the Plaintiff, in evaluating the effect on the Plaintiff of disabling pain. In the Second Assignment of Error, plaintiff contends that the ALJ's analysis of the plaintiff's pain failed to follow this Circuit's "repeated admonitions" to the Commissioner of Social Security as to how to evaluate disabling pain. Both assignments of error address how the ALJ handled plaintiff's subjective complaints, including pain, and will be considered together.

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that

"[b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaints was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[3]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaints asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other

---

[3] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

More specifically, plaintiff argues that the ALJ erred in his supposedly dismissive treatment of plaintiff's allegations of pain:

> It is clearly not enough under the law of this Circuit for the Administrative Law Judge to simply recite from computer generated boiler plate in his opinion, as ALJ Avots did, that, " The Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."

Plaintiff's Brief, at 6-7 (internal citation omitted). As is evident from plaintiff's own brief and, indeed, this court's own recommendation, "boilerplate" is commonplace in the legal profession and it is not error for an ALJ to use it in formulating his or her opinion. By attacking the boilerplate aspects of the ALJ's decision, plaintiff's argument fails to first note that the ALJ specifically stated "for the reasons explained

below," Tr., at 26, and then fails to acknowledge that the ALJ specifically and clearly gave his reasons for not fully crediting plaintiff's testimony:

> The claimant testified at the hearing that she suffers from multiple medical conditions. Unfortunately, her testimony seemed directed more so to her condition now rather than what it was like during the relevant period herein, October 22, 2004 through December 31, 2004. What evidence is available on and around that period simply does not support the claimant's allegations of disabling pain and other symptoms.
>
> * * *
>
> After the July 21, 2001, visit the claimant was not treated again for complaints of back pain until January 2006, over four years later when she started treatment with Dr. Charles McGraw. The plaintiff was not being treated at all for her back problems during the relevant period, October 22, 2004 through December 31, 2004.

Tr., at 26 (internal citation omitted). The ALJ gives similar thorough treatment to plaintiff's other complaints and medical conditions. He concludes, as follows:

> In sum, the undersigned finds that during the relevant period, October 22, 2004 through December 31, 2004, the claimant's back pain and carpal tunnel syndrome appear to have been under fairly good control as she was receiving no regular medical treatment for either of the conditions.
>
> * * *
>
> As for her Crohn's disease, the claimant was hospitalized on two occasions during the relevant period , but subsequent treatment notes show her condition improved significantly.

Tr., at 27. Such determination fully complies with the currently applicable standard for evaluating pain and other subjective complaints in the Fourth Circuit. Further, such determination is fully supported by substantial evidence of record. The undersigned finds no merit to the first and/or second assignments of error.

### 3. Third Assignment of Error

In her third assignment of error, plaintiff contends that the ALJ erred in his finding that she had transferable skills "to work in a doctor's office taking blood pressure, etc." In considering such assignment of error, the court has first reviewed the transcript of the hearing at which Dr. Robbins, who was qualified as a vocational expert without objection from plaintiff's counsel, testified that plaintiff's past work as an LPN was skilled, medium level work as generally performed and medium to heavy work as plaintiff reported to have performed it. Tr., at 635. Dr. Robbins then testified that this job provided various medical-related skills that would be transferable to light jobs that were medically related. Id. When asked in particular what these transferable skills were, Dr. Robbins testified as follows:

> the type of work that she did as an LPN, that she was able to take - - do medical charting, and to be able to take, you know, blood pressures, temperatures. Be able to dispense medications. Those would be transferable over to lighter work.

Tr., at 635.

The logic behind plaintiff's argument appears to be that in order for the ALJ to find skills transferable, the ALJ "had to completely ignore the testimony of the Claimant above referred to, the medical records indicating her chronic impairments, and particularly her chronic pain, and the specific finding of Dr. Wolyniak...."

10

Plaintiff's Brief, at 7. Thus, plaintiff's assignment of error is not that LPN skills are not transferable to lighter duty medical jobs, such as those described by the VE; rather, it is her contention that she lacked the residual functional capacity to perform or employ such skills in lighter work in a medical office.

As discussed above, however, the ALJ did not fully credit plaintiff's testimony of disabling pain during the limited window of time under review. Indeed, the ALJ reasoned that plaintiff was under absolutely no care for pain she described as disabling at the time and further stated that her testimony centered on what she was then experiencing at the time and date of the hearing, rather than what she experienced some three years earlier. The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at (or just before reaching) the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). Plaintiff has presented and pointed to no evidence in her testimony which would support her contention that certain LPN skills were not transferable to lighter medical work.

Plaintiff has also pointed to the consultative evaluation of Dr. Wolyniak as supportive of this contention. Earlier in her brief, plaintiff points out "a list of ten major health concerns" in Dr. Wolyniak's assessment and argues that the ALJ failed to evaluate these findings. Plaintiff's Brief, at 5. The ALJ does, however, discuss Dr. Wolyniak's 2005 opinion, discussed his findings as to plaintiff's carpal tunnel syndrome at length, and then cites Dr. Wolyniak's opinion as the *supportive* basis for limitations based on carpal tunnel syndrome. As to the other ailments listed in Dr. Wolyniak's assessment, the ALJ takes no issue with the fact that plaintiff suffered from such illnesses, and similarly lists such ailments in his opinion. Tr., at 25-27. The fact that plaintiff at some time of her life suffered from a disease or injury is not, however, necessarily relevant; what is relevant are the impairments and the vocational limitations such impairments imposed on plaintiff during the period under consideration.

Where the ALJ properly formulates his hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert, the ALJ did not fail to consider all the evidence, and his reliance on the opinion of the vocational expert that jobs were available to a person with

plaintiff's limitations was proper. The undersigned can, therefore, find no error in the ALJ's reliance on the opinion of the VE that plaintiff possessed transferable skills.

### 4. Fourth Assignment of Error

In her fourth assignment of error, plaintiff contends that the ALJ erred in disregarding the opinion of Dr. McGraw, her treating physician, "to the effect that she suffers from anxiety and depression, a non-exertional impairment, which should have been considered in combination with her physical medical impairments." Plaintiff's brief, at 8.

A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The opinion of a treating physician is only entitled to controlling weight if it is supported by "clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(d)(2).

> If a physician's opinion is not given controlling weight, then the "factors listed below" and in paragraphs (d)(3) through (5) used to determine the amount of weight to be given it are (1) the length of the treatment relationship and the frequency of examination ("the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion"); (2) the nature and extent of the treatment relationship; (3) supportability ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"); (4) consistency ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); and (5) specialization ("[w]e generally give

13

more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). Id. The regulation also makes clear, however, that the ultimate determination of disability is reserved for the Commissioner, and "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).

Pittman v. Massanari 141 F.Supp.2d 601, *608 (W.D.N.C. 2001)(Horn, C.M.J.). Review of the administrative record reveals that Dr. McGraw's opinion was rendered three years after plaintiff's insured period expired, Dr. McGraw did not begin his relationship as a treating physician until one year after the period expired, and, further, there was no evidence that Dr. McGraw reviewed any medical records from the relevant period in reaching his conclusions.

In January 2008, Dr. McGraw opined that plaintiff could only sit for one hour at a time and a total of about two hours in an eight-hour period; stand or walk for half an hour at a time and a total of less than two hours in an eight-hour period; and, might need to lie down for fifteen to thirty minutes on occasions during the day. Tr., at 606. He opined that plaintiff could not frequently lift or carry; could only occasionally lift or carry less than ten pounds and could never lift or carry ten pounds or more. Tr., at 607. Dr. McGraw also indicated that plaintiff suffered from a generalized anxiety disorder and anxiety with depression, Tr., at 605, of which plaintiff takes particular note in her brief.

Not only did the ALJ explain that he was giving Dr. McGraw's retrospective opinion no weight, he explained his rationale as follows:

> The undersigned has considered the opinion provided by Dr. Charles McGraw, the claimant's current treating physician, found at exhibit 25F, but have given this opinion no weight herein.
>
> * * *
>
> The undersigned notes that Dr. Mcgraw did not begin treating the claimant until January 26, 2006, over one year after her date last insured, and there is absolutely nothing in his treatment records to suggest that he ever reviewed the claimant's prior treatment records from her other physicians. The undersigned also notes that while claimant may be experiencing some anxiety and depression now, there is nothing in the evidence to show that she was experiencing these problems during, or even prior to , the relevant period herein. No mention was made of these conditions until January 2006. Thus, the claimant's alleged mental problems were not medically determinable impairments during the relevant period.

Tr., at 28. Such explanation fully complies with the requirements outlined by this court in Pittman, supra. The undersigned can, therefore, find no merit in this assignment of error.

Finally, plaintiff contends that the ALJ erred when he failed to include (in the hypothetical he later relied on) limitations indicated by Dr. McGraw's opinion. The ALJ was, however, under no obligation to include such limitation in his hypothetical as he determined that such limitations were not supported by the record reflecting plaintiff's health in the last quarter of 2004. Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set

forth the extent and duration of the claimant's pain, if any.  Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978).  The undersigned can find no error in the ALJ's hypothetical as the articulated reasons justifying the ALJ giving Dr. McGraw's opinion no weight also fully support his decision not to include limitations that may have been suggested by Dr. McGraw's opinion.

E.   **Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error.  Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence.  See Richardson v. Perales, supra; Hays v. Sullivan, supra.  Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra, the undersigned must recommend to the district court that plaintiff's Motion for Summary Judgment be denied, the Commissioner's Motion for Summary Judgment be granted, and that the decision of the Commissioner be affirmed.

**RECOMMENDATION**

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1) the decision of the Commissioner, denying the relief sought by plaintiff, be **AFFIRMED**;

(2) the plaintiff's Motion for Summary Judgment be **DENIED**;

(3) the Commissioner's Motion for Summary Judgment be **GRANTED**; and

(4) this action be **DISMISSED**.

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: August 3, 2010

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge